490

In the Matter of the Estate of BERTRAND H. SNELL, Deceased. WILLIAM E. PETERSON et al., as Executors of BERTRAND H. SNELL, Deceased, Appellants; STATE TAX COMMISSION OF THE STATE OF NEW YORK, Respondent.

In the Matter of the Estate of BERTRAND H. SNELL, Deceased. WILLIAM S. CRAPSER et al., Appellants; MARSHALL W. PASK, as Trustee, Respondent.

Third Department, December 28, 1962.

*Vaughan & Lyons* and *Crapser & Kirsch* (*John T. De Graff* of counsel; *James N. Vaughan* on the brief), for executors, appellants.

*John T. De Graff* for attorneys, appellants.

*Edward H. Best* (*Francis Kelliher* and *Vincent P. Molineaux* of counsel), for State Tax Commission, respondent.

*Turk, Marsh, Ouchterloney & Kelly* (*Harry Allan Leigh* of counsel), for Marshall W. Pask, as trustee, respondent.

*Per Curiam.* Appeal is taken by the executors from an order of the Surrogate's Court of St. Lawrence County which denied and disallowed their appeal from the so-called *pro forma* order of the Surrogate assessing the estate tax (see Tax Law, §§ 249-w, 249-x), whereby, in disregard of the report of the appraiser (Tax Law, § 249-v) and, in appellants' view, of his ministerial duty in the first instance to value and assess the estate in accordance with such report, the Surrogate decreased the amount of the reported and approved deduction of $150,000 for attorneys' fees by the sum of $100,000 and increased by that amount the value of the net estate subject to tax. In a separate proceeding, brought by the attorneys concerned, under section 231-a of the Surrogate's Court Act, to have their compensation to the date of their petition fixed at $150,000, the petitioners-attorneys appeal from a decree fixing the amount at $50,000.

The order in the tax proceeding was clearly erroneous and must be reversed. The executors filed an estate tax return showing, among other things, a deduction for estimated attorneys' fees of $150,000. The appraiser, in this case the County Treasurer (Tax Law, § 249-u), filed his report in which all deductions were allowed in the amounts claimed. Obviously, the reporting executors, whose duty it was to determine initially the reasonableness of the proposed fees, subject to objection by an interested person, approved the amount, and the State Tax Commission interposed no objection to the deduction and, indeed, informed the appraiser, in response to his inquiry, that it would not object to it, provided only that ultimately the amount should actually be paid. To the appraiser's report, however, were added handwritten figures indicating a reduction of $100,000 in the amount of the funeral and administration expenses and a corresponding increase of the net estate, and the so-called *pro forma* taxing order was based upon these figures. Upon the subsequent hearing, which resulted in the order appealed from the Surrogate stated that the interpolated figures and recom-

putations appearing upon the appraiser's report had been added by him. It is too clear to require great discussion that it was the Surrogate's administrative function and his ministerial duty under section 249-w of the Tax Law to enter a *pro forma* order upon the appraiser's report and, had there been any other proof properly before him, and here there was none whatsoever, upon that proof as well. This is the plain mandate of the statute, providing, as it does, that: "From *such report* of appraisal and *other proof* relating to any such estate *before the surrogate,* the surrogate *shall forthwith, as of course,* determine the value of such estate and the amount of tax". (Tax Law, § 249-w; emphasis supplied; and, see, *Matter of Mylod* v. *Graves,* 274 N. Y. 381, 386–387; *Matter of Costello,* 189 N. Y. 288, 291.) As was said many years ago by no less an authority than Surrogate FOLEY, the Surrogate in signing the order "acts as a taxing officer" and "is obliged by the Tax Law (sec. 231 [now § 249-w]) to enter the order fixing tax upon the report as filed." (*Matter of Weill,* N. Y. L. J., Feb. 4, 1932, p. 653, col. 3.) The administrative function and ministerial duty so clearly imposed by section 249-w are, of course, to be distinguished from the Surrogate's judicial authority to be subsequently exercised, if and when invoked by the "tax commission, executor or any person interested in the estate". (Tax Law, § 249-x.) Even if, by some distortion of the plain language of the applicable provisions of the Tax Law, it could be found that, quite aside from and, indeed, precedent and additional to the adequate power of review provided by section 249-x, there resided in the Surrogate, acting as an assessing and taxing officer, some right to ignore or alter the substantive elements of the appraiser's report, and other collated data, if any, surely that essentially judicial authority was not to be exercised and a conclusion reached without notice and without proof. That the changes which the taxing order reflects were the results of subjective considerations and, indeed, of prejudgment, is all too apparent. The circumstances support no other inference; and letters which are in evidence indicate, without contradiction or explanation, not only that the Surrogate stated to the appraiser, some weeks prior to the date of the latter's report, that he would not approve a fee in excess of $50,000, but that it has been the Surrogate's practice to send to fiduciaries a statement of instruction or advice reading "Your reasonable counsel fees paid under section 222 S. C. A. before or without authorization of judicial settlement decree, should not exceed two hundred dollars ($200.00)". We cannot avoid the disagreeable necessity of noting that this surprising and extrajudicial message, however

intentioned, is not alone officious and of marked impropriety, but is, also, grossly inaccurate and misleading.

Turning to the second appeal, the record clearly requires that the decree setting the attorneys' compensation be modified to fix the same at the amount requested. "In general the court, in determining the justice and reasonableness of an attorney's claim for services, should consider the time spent, the difficulties involved in the matters in which the services were rendered, the nature of the services, the amount involved, the professional standing of the counsel, and the results obtained." (*Matter of Potts*, 213 App. Div. 59, 62, affd. 241 N. Y. 593.) While this well-known and authoritative decision is twice cited by the Surrogate, he seems to have been somewhat selective in applying the multiple tests thereby prescribed. The nature of the services and the difficulties encountered appear not greatly different from those usually involved in estates of considerable magnitude and diversification; and, as respects results, the record indicates those normally to be expected from the prompt and competent handling that the legal procedures involved have in this case unquestionably received. The gross estate was approximately $7,000,000 at date of death and, with substantial capital gains and income collections, exceeded $7,700,000 at the time of the intermediate accounting. To the date of the petition, the work consumed some 637 days or parts of days. (Although the Surrogate's opinion correctly tabulates from the testimony the number of days expended, the total is 637, and not 537 as the opinion erroneously indicates when proceeding to use the smaller number as the divisor of $49,500, being the portion of the fee thus far paid, to arrive at a computation of "$92 per part of day" which is thereupon found to constitute adequate compensation.) Respecting the professional standing of the four attorneys principally concerned, the Surrogate's opinion (33 Misc 2d 1044, 1056) states: "The attorneys for the executors are leading members of the Bar of wide experience, competency and peculiar skill in conducting cases such as this. There is no question of their ability and their capacity and success in handling large and important matters and in commanding large fees therefor."

The four petitioners testified as to their services at great length and in great detail. They called as expert witnesses two lawyers of high standing and long experience, one of them, indeed, being an authority whose published survey, on a nation-wide basis, of attorneys' fees in estate matters, conducted at the instigation of the American College of Probate Counsel, was received in evidence. One of these experts appraised petitioners' services at $185,000 and the other at $175,000. Although

the Surrogate remarks (p. 1048) that this case presents to him "an unusual problem", since, in his county, a "very, very small percentage" (p. 1048) of the estates are as large as this, he seems, nevertheless, to find little help in the expert opinions of those more experienced than he, and, indeed, once refers to such presentations as bordering on futility. The minimum fee schedules as adopted by bar associations in most of the counties of the State were received in evidence and should, under the circumstances, have been accorded at least some consideration. By such standards the fee here sought would be considered inadequate and, indeed, amounts to less than 55% of the recommended minimum in St. Lawrence County.

Among all the possible adverse parties, the only appearance was in behalf of a trustee, who seems not to have participated in the hearing. (In his brief upon this appeal, this respondent fiduciary urges only the discretionary power of the Surrogate and fails to advance the slightest suggestion that the fee requested is unreasonable in amount.) Thus the overwhelming evidence of the reasonableness of the requested fee, and its propriety as tested by every authoritative standard, was not contradicted, or, indeed, questioned in any particular.

The basis of the determination, so far as discernible in the long and diffuse opinion rendered, seems to be, simply enough, that the sum of $49,500 received on account of the approved fee of $50,000 is the equivalent of "$92 per part of day" (actually less, since the computation is upon the basis of an arithmetical error) and that such compensation is adequate and reasonable. The timeclock approach, however necessary or appropriate in some fields, is, most certainly, not that to be exclusively employed in the case of high professional skills directed to complex problems involving, among many other factors, the acceptance of heavy responsibility, commensurate with the subject of the retainer, and the utilization of advanced education and long experience. We find apropos the testimony of one of the petitioners, quoted by the Surrogate (p. 1049) for another purpose, that "I was quite struck by the answer Mr. Crapser gave in his testimony because it is so true, we talk about parts of days, but the truth of the matter is we never get the cases out of our heads." As has been said: "The value of an attorney's services cannot be limited to 'specified and detailed bills of particulars with a specified amount for each item, as in the case of goods sold, or mere manual services rendered.' (*Matter of Sewell* [32 Misc. 604, 607].) That is necessarily so, for the real value of an attorney's services may be the result of his thought about the legal questions involved, while away from his office,

at home, or elsewhere. An idea thought out in bed at night may be the most valuable part of an attorney's services, and may constitute a solution of the vital question involved in a litigation." (*Matter of Potts,* 213 App. Div. 59, 62, affd. 241 N. Y. 593, *supra.*) The fee requested is in every respect reasonable and proper.

The order made in the estate tax proceeding on appeal to the Surrogate's Court from the Surrogate's taxing order should be reversed, on the law and the facts, and an order entered which shall amend the taxing order to give effect to a deduction of $150,000 for attorneys' fees to the 24th day of May, 1961, with costs to petitioners-executors, in this court and in the court below, payable from the estate; and the decree in the proceeding under section 231-a of the Surrogate's Court Act should be modified, on the law and the facts, so as to fix and determine petitioners' services to the 24th day of May, 1961, in the amount of $150,000, and as modified affirmed, and an amended decree entered accordingly, with costs to petitioners-attorneys in this court and in the court below, payable from the estate; orders and decree to be settled.

Bergan, P. J., Coon, Gibson, Herlihy and Taylor, JJ., concur.

Order made in the estate tax proceeding on appeal to the Surrogate's Court from the Surrogate's taxing order reversed, on the law and the facts, and an order will be entered which shall amend the taxing order to give effect to a deduction of $150,000 for attorneys' fees to the 24th day of May, 1961, with costs to petitioners-executors, in this court and in the court below, payable from the estate; and decree in the proceeding under section 231-a of the Surrogate's Court Act modified, on the law and the facts, so as to fix and determine petitioners' services to the 24th day of May, 1961, in the amount of $150,000, and as modified affirmed, and an amended decree will be entered accordingly, with costs to petitioners-attorneys in this court and in the court below, payable from the estate. Settle orders and decree.