OPINION OF THE COURT
John D. Bennett, J.
In this accounting proceeding the only issue remaining is the fixation of attorneys’ fees for Mr. Kle, as attorney for the executor, and Mr. Amrod as attorney for the guardian of an infant son. Mr. Kle originally requested a fee of $19,500 in Schedule C-l of the account entitled "Unpaid Administration Expenses” which was objected to. Part of the stipulation of settlement of November 15, 1978, as modified by the stipulation of December 27, 1978, provided that his fee was to be fixed on papers filed without a hearing. However, since Mr. Kle subsequently raised the amount requested by him to $45,375, a supplemental citation was required by decision of March 13, 1979 on this additional relief.
On the petition filed in connection with the supplemental citation he indicated that a total of at least 605 hours had already been expended by him on services rendered and that at least 40 more hours were anticipated primarily in connection with tax matters. The decision of August 23, 1979 refused to proceed with the fixation of fees, since all services had not been completed at that point.
On November 20, 1979 an additional affidavit by Mr. Kle covered most of those anticipated future services amounting to an additional 56 Vi hours for which he requests an additional *693 sum of $4,237.50 increasing the total amount sought to $49,612.50, together with disbursements of $1,518.58.
In fixing fees the court is required to take into consideration a number of factors including the time spent, the difficulties involved, the nature of the services necessarily rendered, the size of the estate and the results achieved (Matter of Freeman, 34 NY2d 1; Matter of Potts, 213 App Div 59, affd 241 NY 593).
The requested fee is arrived at primarily on a time basis with approximately 650 hours at $75 per hour being allegedly spent. While the time spent is the logical starting point in analyzing a fee application (Matter of Chandler, NYLJ, March 29, 1978, p 16, col 3) it is not to be employed as the exclusive approach (Matter of Snell, 17 AD2d 490). Especially is this so when the size of the estate is introduced as an element, since the size of the estate acts as a limitation in fixing the full value of the services (Matter of Kaufmann, 26 AD2d 818, affd 23 NY2d 700). Here the estate’s principal is approximately $300,000, and the total fee presently requested by Mr. Kle of $49,612.50 is certainly disproportionate to that size (see, also, Matter of Martin, 21 AD2d 646, 647, affd 16 NY2d 594 ["(i)f the size of the estate is limited, (fees) may be less than what the services would otherwise command”]; Matter of Jones, 28 Mise 599).
The objections originally filed to the accounting by Mr. Amrod, as attorney for the guardian, and Rosa Cook, the surviving spouse, were the subject of a pretrial conference and stipulation made on October 26, 1977 which disposed of a number of the problems which had arisen in the estate to that date. While this first stipulation was thereafter withdrawn (see decision of May 9, 1978), it is a fact that the objections disposed of in the first stipulation were finally settled on the same terms and conditions. This included Rosa Cook’s claim that the estate should pay for certain income taxes; the claim of the infant to certain custodial property, and the claim that the decedent’s corporation was indebted to him in the amount of $16,000. Concededly, however, on the issue of the custodial funds, services were required because of a hearing which was held before a law assistant-referee on that subject. Nevertheless, as indicated, the matter was eventually settled for the same figure as arrived at in the first stipulation.
Two matters that arose subsequent to the first stipulation and not disposed of by it concern the claim of Joanna Cook to *694 certain alleged custodial funds, and the problem of the proper disposition of the decedent’s corporate pension plan. A hearing concerning Joanna’s claim was also held simultaneously with the hearing as to the infant son’s claim to custodial funds; however, her claim was also finally settled for the sum of $30,000. One additional claim of the infant, Clement Jason Cook, to certain life insurance proceeds in the amount of $10,000 was also eventually settled.
Essentially the overriding problem was a solution to the difficulties which arose in connection with the decedent’s pension plan which amounted to approximately $220,000 comprised mostly of certain securities and life insurance. The pension plan included only two participants, the decedent and his secretary, Michele Wilhelm.
Eventually the Pension Benefit Guaranty Corporation took the position that since the decedent had designated the pension plan as the beneficiary of his insurance policies, and since there was no other designation other than an invalid attempt by will to dispose of his pension benefits all assets must be paid to the one remaining participant, Michele Wilhelm. The Pension Benefit Guaranty Corporation also emphasized that this court had no jurisdiction over the pension plan. Nevertheless, in subsequent conferences a satisfactory settlement was arrived at. Although for a time there may have been some anxious moments in this estate and concern that approximately two thirds of its assets might vanish, this problem also was eventually disposed of by settlement. Moreover, Michele Wilhelm never claimed the entire pension fund and always appeared willing to come to some adjustment depending on the tax consequences to herself. Mr. Amrod, for the guardian, in his affidavit of services, pictures himself as the moving force in precipitating a settlement relating to the pension funds; however, in attacking his application for fees, all of the other attorneys, including Mr. Kle, claim that each of them had a hand in resolving this problem. Interestingly, none of them mention the efforts expended by the court itself, through its Referee, who all would presumably agree expended considerable efforts to effectuate the pension plan settlement.
The primary defense to Mr. Kle’s fee, other than that it is excessive, is the allegation that the problems concerning the pension plan were occasioned by poor draftsmanship of the will, and that since Mr. Kle was the draftsman the woes which he faced in this estate were self-inflicted. To this is also *695 added the argument that he was also the witness to certain change of beneficiary forms designating the pension plan as the beneficiary of the life insurance. While concededly Mr. Kle witnessed the change of beneficiary forms and was the draftsman of this will, which not only attempted to control the disposition of pension funds, but also "shares of stock held by him in trust or custodial accounts for my son Clement Jason Cook”, he attempts to mitigate his involvement in these circumstances by disavowing any close association with the decedent or his estate plan.
Although the defense is one of malpractice, seemingly sounding in tort, this court would nevertheless have jurisdiction to determine that question (Matter of Zalazinick, 84 Misc 2d 715). Although in New York, absent privity of contract, malpractice of an attorney in preparing a will does not render him liable to the disappointed beneficiaries (Victor v Goldman, 74 Misc 2d 685), this is to be distinguished from damage or loss to the estate itself (Heyer v Flaig, 70 Cal 2d 223). In the Heyer case the court indicated that the estate could at least sue for attorneys’ fees expended as a result of the error, which is precisely the claim made here. (See, also, Wierdsma v Markwood Corp., 53 AD2d 581; Heckerling, Estate Planning Malpractice: What Standard of Care?, 116 Trusts & Estates 728 [1977].)
While naturally any determination of malpractice and its resultant effect upon the fees requested would require a hearing, even though waived by all parties, such a hearing does not appear necessary. All of the affidavits in opposition suggest that no more than $15,000 be awarded Mr. Kle for his fees. Mr. Amrod adds an additional $1,000 for services most recently rendered. The court in its own evaluation, considering all of the factors mentioned above, has come to an independent determination that the sum of $15,000 is fair and reasonable and fixes Mr. Kle’s fee in that amount for all services rendered, including the submission of a decree and implementation thereof. Since the beneficiaries who have opposed the fee have conceded at least a like fee and the result of a hearing on the malpractice issue could only serve to lower the fee fixed, the malpractice issue is deemed moot. The disbursements requested will be allowed in the sum of $542. No explanation is given as to the "witness” fee and affidavit expenses, and the balance are considered part of overhead.
*696 Much opposition is directed to Mr. Amrod’s fee on the basis that his services merely benefited his client, an infant who has appeared by his mother as guardian; however, if an infant appears by his guardian the court may nevertheless allow the guardian such counsel fees as the court deems reasonable for services incurred in protecting the infant’s interest in the proceeding (SCPA 405, subd 3).
Mr. Amrod adequately discharged his duties in protecting the decedent’s infant son and filed an extensive report of some 16 pages outlining all of the proceedings. He alleges an expenditure of over 230 hours of time at a rate of $100 per hour for a total fee of $14,375 with $4,875 plus $191.97 in disbursements, payable by the estate, and the balance from the guardianship estate.
In fixing the fee of a guardian ad litem, the court employs the same factors as those applicable to fees in general (Matter of Burk, 6 AD2d 429). Similarly here, where the size of the estate is limited, fees may be less than what the services would otherwise command. Taking into consideration all of the criteria, Mr. Amrod’s fee is fixed in the sum of $6,000, $1,500 of which is directed to be paid from the estate inclusive of disbursements and the balance payable from the guardianship funds.