OPINION of the court
Millard L. Midonick, J.
The issues before this court embrace many considerations which would tax the ability of any court to clear away the entanglements and debris of more than a decade of internecine in-fighting between two brothers who dominate an enormous privately owned corporation.
*453 In this proceeding which commenced in order to impress a constructive trust upon the decedent’s widow’s exercise of her general testamentary power of appointment, so as to equalize and stabilize the control of a large privately held family corporation between the two brothers, sons of the decedent and his widow, the court persuaded the family to begin to compose their differences by stipulation. The settlement stipulation involved the purchase by this family corporation of its own stock then owned by the family charitable foundation, reinstating equality between the two brothers in controlling this corporation, compensation of several law firms for services in behalf of the corporation, and many related problems.
The Gilman Paper Company has grossed approximately $250,000,000 annually of sales in recent years. Until several years ago, net profits were enjoyed, but in the immediate recent years, losses have replaced net profits.
In 1948, the decedent, father of both brothers, formed an inter vivos trust which, upon his death in 1967, left control of this corporation under the power of three persons: the brothers, Howard Gilman and Charles Gilman, Jr., and the then general counsel of the corporation, I. Alfred Levy. All of the said trustees then held, and at the inception of this proceeding still held, as trustees of this inter vivos trust, six shares of stock, being the only voting shares of this corporation’s stock.
Before the stipulation of settlement, this court’s intervention was invoked by Levy’s attorney to relieve Levy of his trusteeship because of age and illness. By this time, the affairs of the corporation had deteriorated because of (A) errors of judgment, mainly of Howard and Charles, Jr. (hereinafter Chris), (B) extreme hostility between these brothers, (C) the inability of Levy to function to break deadlocks and otherwise, due to his age and illness, and (D) general economic problems affecting this business adversely.
Upon conferences with the many counsel involved, this court indicated informally that it would consider removal of all the three inter vivos trustees due to want of ability to function adequately as fiduciaries for the reasons set forth *454 above. The material operating cause of the May 22, 1981 stipulation of settlement executed by Howard and Chris, as well as by all interested parties and all counsel for those parties, was avoidance of this proposal by the court of consideration of removal of all three trustees.
One counsel not adversely affected by such removal was the Attorney-General of the State of New York, who was and is interested as representing the public who are the ultimate charitable beneficiaries of the Gilman Foundation which owned a large block of nonvoting stock of the corporation acquired under the will of the decedent.
Before the May 22, 1981 settlement, Howard had persuaded Levy to downgrade Chris’ status from cochief executive officer to president, retaining for Howard the sole role of chief executive officer. One of the terms of the May 22, 1981 stipulation of settlement provided for restoration of the equality of cochief executiveship to Chris with Howard. Another party besides Chris favoring restoration of equality between Chris and Howard was their mother who is the beneficiary of a large block of nonvoting stock of the corporation.
Within a few days after the May 22, 1981 stipulation, but before the implementation of its provision of equalization of corporate chief executiveship between Howard and Chris, Howard, still sole chief executive officer, on June 2, 1981 took it upon his controlling authority to authorize and direct the disbursement of the balance of $3,576,816.55 in legal fees (including disbursements of $76,816.55), 60% to Bergreen & Bergreen and Bernard D. Bergreen, P. C., and 40% to William C. Warren. Bergreen and Warren had represented and advised the corporation management in respect to many vital problems for about two years, and had persuaded Howard to defer to this court’s insistence on restoration of equality between the two brothers.
At the outset, this court finds and holds that Bergreen’s representation of controlling management of the company, involved no conflict of interest or departure from ethical conduct, in his services to the corporation, disqualifying him from being paid reasonable fees by the corporation, or *455 requiring his removal from representing the corporation if its directors wish to continue his role as one of outside general counsel. (Cf. Developments in the Law, Conflicts of Interest in the Legal Profession, 94 Harv L Rev 1244.)
Only the fees of Bergreen and Warren, however, were paid ex parte as it were, evidently due to concern that this court lacked jurisdiction to award any fees in case of controversy.
Fortunately, this court’s power in respect to fees is firmly based upon any, and certainly upon a combination, of the following grounds:
(A) the recent statutory expansion conferring jurisdiction upon this court over inter vivos trusts (L 1980, ch 503); Howard and Chris were two of the three trustees of the inter vivos trust here involved with controlling voting power over this corporation. At the instance of this court, Levy was permitted to resign as a trustee due to illness, just before his death; and at the insistence of this court, Howard and Chris chose to replace him with an outstanding and experienced executive (Baldwin) on the 29th day of the 30 days allowed by the court after Levy’s withdrawal;
(B) the fact that all of the shares of stock of this corporation had been owned by the decedent and were either placed in the inter vivos trust by him, or devised under his will, and therefore the fortunes of both the trust and the corporation affected “the affairs of [a] decedent” under the Constitution of the State of New York (NY Const, art VI, § 12, subd d; SCPA 201, subd 3; 202, 209, subd 10.) Whatever the effect of corporate veils in other contexts, this gossamer one cannot shield any party from this court’s jurisdiction (cf. Matter of Rothko, 84 Misc 2d 830, mod 56 AD2d 499, affd 43 NY2d 305);
(C) the stipulation dated May 22, 1981, which provides the procedure waiving hearings and appeals, thus bringing closer the end of the drain of disputation and of litigation upon the financial and energy and time resources of those seeking to restore this corporation to prospering. The May 22, 1981 stipulation provides:
“the surrogate: If any controversy arises or construction is needed with regard to the meaning, effect, or imple *456 mentation of this stipulation, except with respect to the amounts in excess of $16,000,000 which the Foundation may be entitled to receive under this stipulation, the said Surrogate shall be the final arbiter of the problem without the need for formal hearings or appeals, which are hereby waived.
“This stipulation shall be binding upon all parties upon the entry of a decree of the Surrogate’s Court of New York County approving its terms.”
Such a decree was entered on June 17, 1981. (Cf. Matter of Gilman, 109 Misc 2d 749.)
No unnecessary hearings supervised by a referee or the court are needed or will be tolerated. Such hearings would lead to conflicting evidence which would not clarify the adequate showing contained in about seven pounds of affidavits, memoranda of law, reports, and letters, together with informal conferences, all of which afford all that is needed to inform the court and to afford due process so that the parties and the corporation and the trust and the estate are protected and instructed. Neither Bergreen nor Warren, whose fees are being partially restored to the corporation, are requesting formal hearings.
The recent ratification by the current corporate board of directors, by a vote of 4 to 1 (only Chris dissenting), of the $3,576,816.55 aggregate fees paid by the corporation to Bergreen and Warren, are evidence in support of those fees, as is the approval of the trustee Howard (interested though he is) and Baldwin (disinterested as he may be), although for the reasons set forth above, this court cannot be concluded by these views and votes under the guise of a corporate veil. Nor can Chris’ dissent control this court.
Turning at long last to the task of fixing attorneys’ fees, an area in which this court has enormous experience, our finding is balanced by various factors long emphasized by the leading authorities. (Matter of Potts, 213 App Div 59, affd 241 NY 593; Matter of Freeman, 34 NY2d 1.)
With respect to time spent, these attorneys, over a period of about two years, were heavily involved in seeking to stabilize and to improve the management of this corporation. Much of this time was spent not only during the usual *457 office hours, but at nights and weekends, and even holidays. While the court finds that continuing time expenditures were made by both Bergreen and Warren, they are unable to reconstruct substantially accurate time records which were not kept contemporaneously. Neither of these attorneys was a corporate director or trustee or executor, and were therefore paid only for their business, financial and legal advice. Accurate time records do not constitute the essential basis for the compensation of these two attorneys. In Matter of Snell (17 AD2d 490, 494), the court stated: “The timeclock approach, however necessary or appropriate in some fields, is, most certainly, not that to be exclusively employed in the case of high professional skills directed to complex problems involving, among many other factors, the acceptance of heavy responsibility, commensurate with the subject of the retainer, and the utilization of advanced education and long experience.” The absence of appropriate time records is a basis for reducing fees, not for eliminating them, and not for further expensive litigation concerning fees which litigation will not create time records.
The next factor to which we turn concerns the difficulties involved in the matters in which the services were rendered. All of these problems were, by their nature, involved with aspects of high finance, of business and legal advise, and all of them were necessary in order to avoid or reverse corporate actions that were inimical to the business success of this company, and in order to advance its prospects of long-range profitability.
The professional standing and credentials of these attorneys have been weighed by the court.
As for the “amount involved” and the “results obtained”, these aspects are to be evaluated both now and in the future before their real impact can be seen.
It seems fair, therefore, particularly because of the considerations emphasized in the last paragraph, that the payment of an aggregate of $3,500,000 of legal fees to Bergreen and Warren might be found to be full payment to date if the future is as bright as Bergreen and Warren expect it to be. Since the future is particularly clouded at *458 this point, it is hereby determined that the payment of $3,500,000 in legal fees is, at this point, premature, and may never be owing beyond the current allowance herein. It is therefore the determination of this court that Warren shall restore to the corporation, of the said sum, an amount equal to 20% of his share; and that the Bergreen interests (Bernard D. Bergreen, P. C., and Bernard D. Bergreen, Esq., and Bergreen & Bergreen) shall restore to the corporation an amount equal to 40% of their , aggregate share, jointly and severally. These reductions include interest which has been considered by the court in making the above findings; interest shall commence after the services on these respective attorneys of copies of the order in accordance with this opinion. The private agreement between the Bergreen interests and Warren to share fees from this corporation in a percentage (60% and 40%, respectively) agreed upon by them cannot, in fairness to the corporation, the trusts and the estate, be honored. In view of the court’s finding herein as to the respective value of these services, it would seem professionally inappropriate for them to allocate these fees in different proportions now.
One basis for reducing the Bergreen group more than Warren is simply that it is this court’s finding that Warren has the greater experience and expertise in tax problems and in high finance problems which were of more value to this corporation than hard work and corporate planning which was accomplished by Bergreen, as well as Warren. While it appears that Bergreen spent more time than Warren as a day-to-day counselor, the value of Warren’s contribution reposes in his level of professional experience in more essential fields. One additional reason for restoring more of the fees (40% restoration) paid to the Bergreen interests than that paid to Warren (20% restoration) is to be found in the fact that the fees paid to the Bergreens are substantially greater than the fees paid to Warren, although the values of their respective services to the corporation are closer to equivalence, in accordance with the result herein ordered. In short, while Warren was paid too much, the Bergreens were paid, in the aggregate, much too much.
*459 It has come to the court’s attention within the last few weeks that a Supreme Court action has been instituted in New York County by Bergreen & Bergreen and its successors against Bernard D. Bergreen, P. C., and Bernard D. Bergreen, contesting the keeping by Bernard D. Bergreen, P. C., of a substantial part of the fees involved here. This issue of a dispute within a law firm which seems to have dissolved, is not before this court and will presumably be determined in the Supreme Court proceeding. The restraining order meant to preserve that part of the fee paid by the corporation to Bernard D. Bergreen, P. C., shall continue until the escrow for this sum ordered by this court to be held by the Morgan Guaranty Trust Company of New York, as escrowee, shall have been effected.
[Portions of opinion omitted for purposes of publication.]