1840.

Clinch
v.
Eckford.

CLINCH *vs.* ECKFORD and others, executors, &c.

Where the testator appointed his confidential clerk and book-keeper one of his executors, and directed the co-executors to allow him such yearly compensation, for his special services, as they or a majority of them should deem proper; *Held*, that such clerk was not entitled to a salary for the ordinary discharge of his duties as one of the executors; but merely to a salary, in addition to the usual commissions, while he continued to perform extra services; and that this direction in the will was only intended as *an authority* to the other executors to allow him a salary for extra services, in addition to the compensation allowed by law, so long as they thought proper to require such extra services to be performed by him.

Without an authority contained in the will for that purpose, the executors are not authorized to employ one of their number to perform extra services as clerk, in keeping the accounts of the estate, and to allow him a salary for his services out of the property; in addition to the commissions allowed by law.

May 19. THE object of the bill in this case, was to compel the other personal representatives of Henry Eckford deceased, to pay to the complainant, as one of those representatives, an annuity of $1200, from the death of Mr. Eckford, in 1832, to 1840, the time directed in his will for the distribution of his estate among his legatees and devisees. The bill stated that the complainant had, from 1824 until the death of Mr. Eckford, been his confidential clerk and book-keeper, and financier; that from his situation he was fully acquainted with his commercial business and financial concerns; and that he had been allowed by Mr. Eckford a salary of $1200 per annum. Previous to Mr. Eckford's sailing for Constantinople, where he died, he made his will, and thereby devised all his estate, real and personal, to his executrix and executors, and the survivor of them, in trust, for the purposes of his will; and directed that his estate should not be divided previous to February, 1840, but should be kept together and improved and disencumbered, as far as practicable, until that time; and that in the meantime his widow should receive so much of the estate as was necessary for her support, and for the support of such of his

family as chose to live with her. He also authorized his executrix and executors to sell and convey such of his real or personal estate as they or a majority of them should deem expedient, or to mortgage the same to raise money, &c. And he appointed his wife executrix, and the complainant and three other persons executors of his will, and the guardians of the persons and estates of his minor children, and of his grand child whose mother was dead. At the close of the will, he added the following clause, upon which the claim of the complainant arose : " And I direct, in addition, that my executrix and executors shall allow to the said Charles P. Clinch, such yearly compensation for his special services as they or a majority of them shall deem proper."

The executrix and executors all assumed the execution of the will, and took out letters testamentary thereon. And about ten months afterwards, the executrix and the other executors determined to allow the complainant $1200 per annum for his special services, as authorized by the will. On the 2d of January, 1836, the complainant being then a member of the state legislature, the executrix and two of the executors, being a majority of the whole number, adopted a resolution as follows, which they communicated to him by letter :

" Oysterbay, January 2d, 1836. At a meeting of the executors of the estate of H. Eckford, it was resolved, whereas Mr. Clinch, who has heretofore acted as the agent of the estate, in consequence of his appointment to the state legislature, and necessary absence from the city, will be prevented from paying proper attention to the business of the estate, and which its exigencies now require, therefore, resolved, that we do from this date dispense with his extra services, and that his salary therefor do cease. Also, resolved, that Mr. Clinch be requested to place the papers and property of the estate now in his hands, in the possession of Gabriel F. Irving and James De Kay, in order that the necessary attention may be paid to the business of the estate during his absence from the city." (Signed)

"Marion Eckford, J. E. De Kay, G. F. Irving." In answer to this communication, the complainant stated that he was not and never had been the agent of the estate, and was not bound to perform any extra services; but that he claimed the salary for the discharge of his ordinary duties as one of the executors. And this was the claim made by him in his bill.

*C. Bushnell*, for the complainant.

*J. P. Hall*, for the defendants.

THE CHANCELLOR. Taking the will in connection with the several extrinsic facts and circumstances stated in the complainant's bill, I have no doubt that the testator contemplated the continuance of the complainant, by the other executors, as the book-keeper and financial agent of the estate, as he had been of the testator himself, so far as the services of such an agent were necessary; and that the testator could not have intended to allow him a salary for the ordinary discharge of the duties of a joint executor merely. The term special services, necessarily means something more than the ordinary services which the other executors would be required to perform personally. And this provision appears to have been inserted, at the end of the will, probably upon the suggestion of counsel, to enable the other executors to continue him as such confidential agent and book-keeper, &c.; and to pay him for such services a compensation which they would not have been authorized to allow him without a special provision in the will to that effect; the law having settled the compensation to which he would be entitled, and the courts not being authorized to allow the executors any greater compensation even for extra services. So long, therefore, as the complainant continued to perform such extra services as were contemplated by the testator, it was the duty of the other executors to allow him such compensation therefor as those extra services were worth, in addition to his share of com-

missions as one of the executors. But as he refused to perform any extra services, it would have been a violation of their duty if the defendants had continued his salary.

I am also satisfied that the subject of compensation for such extra services was under the control of the majority of the executors at all times ; and that it was their duty to have increased or diminished the amount, from time to time, as the value of such extra services changed. And that the complainant, on the other hand, was not bound to perform any such extra services, unless they were willing to allow him what was reasonable therefor. In other words, this provision in the will was not intended to give the complainant a fixed and permanent salary during the continuance of the trust, without reference to the extra services which it might be necessary for him to perform. But it was a special *authority* to the other executors to agree with him from time to time to perform these extra services, and pay him a reasonable salary for such services ; which they could not have done without a special authority in the will for that purpose.

The claim set up in the bill cannot, therefore, be sustained. The demurrer must be allowed, and the bill dismissed with costs.