*The final accounting in* Stephen B. Munn's *Estate.*

An executor cannot be allowed for professional services as an attorney for the estate, even upon a written retainer, and where his services have been highly beneficial to the estate.

The Surrogate. John A. Collier and Cornelius V. S. Rosevelt are surviving executors of the will of Stephen B. Munn, deceased. The bulk of the estate was distributed and a decree on final accounting made by my predecessor, December 1, 1858. A suit at law was then pending, the event of which might charge or discharge Munn's estate to a considerable amount, and the executors were therefore directed, by the Surrogate's decree, to retain $9,000 in their hands, to abide the event of that suit. It has since, after two trials, been compromised, and the executors apply for a second final settlement of their accounts. Each files a separate account, and it appears from both that a disbursement of $3,000 has been paid to or retained by Hon. John A. Collier, one of the executors, as a counsel fee in the suit at law just alluded to. The special guardian for the infant legatees, Morris S. Miller, held it to be his duty to object to

this payment or charge. The auditor to whom the accounts were referred, Hon. Robert C. Hutchings, allowed the payment, and the question arises on the motion for confirmation of his report.

It is proven or admitted that Mr. Collier was *bona fide* the active counsel employed for the estate in the litigation in which it was interested; that this litigation commenced in 1856 and continued for nine years, and that when it was finally compromised, some $7,500, being half the original claim against the estate, was saved by his efforts; that he was employed as such counsel by a written retainer, signed by his co-executors, and by adult legatees; among the latter the mother of these infants (then unborn), on whose behalf this objection is now interposed; that Ex-Surrogate Bradford, acting as auditor under a reference of the former accounts ordered by the then Surrogate, West, reported that Mr. Collier should be allowed $3,000 for this professional labor; and, finally, that, by a stipulation in writing among all the parties who were in interest at the time of that accounting in 1858, the compensation of Mr. Collier for this labor was expressly agreed to be paid out of this reserved fund left in the executors' hands by that decree.

But these infants have come into an interest under this will since that time, and their rights and interests are not to be prejudiced or overlooked in consequence of any act of other parties.

The rule is, that an executor should make no profit nor incur any damage personally, by reason of his services and trusts in that capacity. It was laid down by the old writers, that an executor shall have no allowance whatever, for personal trouble and loss of time in the discharge of his duties. (*Robinson* v. *Pett*, 3 *P. Wms. Rep.*, 251.) In this State, Chancellor Kent held this to be the rule, as early as 1814, in *Green* v. *Winter*, 1 *John. Ch. Cases*, p. 37. In *Manning* v. *Manning*, 1 *John. Ch. Cases*, p. 534, the rule is again affirmed. The

hardship of it, however, resulted in an appeal to legislation. The law of 1817 (*Session Laws, ch.* 292) authorized the Chancellor to make a reasonable allowance for services, and on the 16th October, 1817, the Court of Chancery established a rate of allowances by rule; *vide* 3 *John. Ch., p.* 630. The Revised Statutes incorporated these rates into the law. (1 *R. S., vol.* 2, *p.* 93, § 58; *Reviser's Notes to 2d edition,* 3 *R. S., p.* 644.)

The subsequent decisions which deny to an executor compensation for services as attorney or counsel, clerk or agent, on behalf of an estate, have been so numerous and uniform in our Surrogate's Courts, and in the higher Courts of Law, that I am surprised that a lawyer of the erudition and experience of Mr. Collier could have supposed such a claim tenable.

In 6 *Paige R., p.* 215, where the receiver of a bank employed himself as counsel, his claim was disallowed by the Chancellor on the same reasoning. In *Clinch* v. *Eckford,* 8 *Paige,* 412, three executors employed other two of the executors as clerks, and this was disallowed. It is true an executor has always been allowed for counsel fees necessarily and in good faith paid by him to counsel employed for the estate. (*Hosack* v. *Rogers,* 9 *Paige,* 461.) But he cannot pay them to himself.

The same principle runs through all the decisions of the Courts, both in this country and in England. The execution of a will is a trust, and the duties of an executor are assimilated to those of trustees. In *Hill on Trustees, p.* 576, the law is laid down with great clearness.

" Where a trustee is the solicitor of a *cestui que trust,* an agreement between them that the trustee shall be entitled to his professional charges, or any other benefit, is looked upon with suspicion (*Ayliff* v. *Murray,* 2 *Atk.,* 60); and the circumstance of his client being a woman, would be an additional argument against the validity of such an agreement. (See 3 *M. and Cr.,* 48.) Indeed, a

solicitor can scarely hope to support a claim founded on such a contract, unless he could satisfy the Court that the client had been made aware of his rights, and of the rule of law respecting such allowances to trustees, and of the effect of the contract; and the burthen of proving these facts will rest with the solicitor. Moreover, it is very desirable that the agreement itself should, in its terms, explain all these circumstances, and that it should be approved by counsel, or some other professional adviser, on behalf of his client. (R. Sherwood, 3 Beav., 339.) Upon this subject, Lord Cottenham said the agreement must be distinct, and in its terms, explain to the client the effect of the arrangement, and the more particularly, when the solicitor for the client, becoming himself a trustee, has an interest personal to himself, adverse to that of the client. It is not easy, in such a case, to conceive how, consistently with the established rules respecting contracts between solicitors and their clients, a solicitor could maintain such a contract, made with his client for his own benefit, the client having no other professional advice, and in the absence of all evidence, and of any probability of the client (a woman, too) having been aware of her rights, or of the rule of law, or of the effect of the contract."

And where there are infants, whose interests are under the express protection and care of all Courts, and especially of a Court of conscience, the rule which refuses an executor compensation as an attorney cannot be too rigidly adhered to. The least deviation from it might be attended with most dangerous results, and we might witness the patrimony of children squandered by faithless executors and trustees in expensive and causeless litigation.

The executor, Collier, moreover, in the accounts before me, has overlooked another important restriction upon the action of the executor, which forbids an executor to retain any part of the property of the deceased in satis-

faction of his own claim, until it shall have been proved to and allowed by the Surrogate. (3 *R. S.*, 5th ed., p. 175, § 37.)   Had he had any legal claim for services, it was his duty to present and prove it in the first instance, before the Surrogate.   He has undertaken to pay himself, without the Surrogate's previous allowance.

· The amount of $3,000 must, therefore, be disallowed from the payments, and charged against John A. Collier.