ALLOWANCE TO EXECUTRIX—PAYMENT FOR ATTORNEYS' SERVICES.

    On an issue as to the value of attorneys' services paid for by an executrix, a reasonable preponderance of the evidence favored her claim to a credit therefor, and the evidence also was such as to show that she would have been scarcely justified in refusing payment and subjecting herself and co-executrix to an action therefor.  *Held*, that she should be allowed for such payment.

Judicial settlement of the accounts of Harriett E. Sewell and another as executrices of Thomas Thornton, deceased.

Hickman & Palmer and Simon Fleischmann, for executrix Harriett E. Sewell.

Clinton B. Gibbs, for executrix Helen T. Campbell.

MARCUS, S.   Thomas Thornton, a wealthy and successful merchant of Buffalo, died February 22, 1896, leaving a last will and testament, by which he bequeathed his large estate of about $500,000 to his two surviving daughters, Harriett E. Sewell and Helen T. Campbell, whom he also appointed executrices of the will.   Among the assets left by the decedent was his interest in the large and profitable milling plant of Thornton & Chester, at Buffalo, besides cash, bonds, mortgages, stocks, securities, and real estate.   As the daughters were not women of practical business experience, they immediately upon the death of their father employed Messrs. Hickman & Palmer, a firm of well-known attorneys of Buffalo, to probate the will, and practically to administer the entire estate, making them, in effect, the acting executrices.   Several litigations arose in the course of this administration, and the business affairs, securities, and assets of the decedent required  substantially constant watching.   The litigations and the winding up of the affairs of the estate covered a period of about four years, during all of which time Hickman & Palmer have acted as the attorneys for the estate, and have had the practical administration thereof.   The property which the daughters became entitled to under the will has been nearly all divided between them from time to time as the same assumed divisible form, and they now come into court asking, in effect, for a final accounting and discharge as executrices of the estate.   They have stipulated that their accounts, as they exist to date, may be passed and approved, with the exception of three items:   (1) An item of $15,000, for which Mrs. Sewell, one of the executrices, claims credit, she having paid the same as a balance due Messrs. Hickman & Palmer for legal services rendered the es-

tate, and to which her co-executrix, Mrs. Campbell, objects, upon the ground that it is too large. (2) A mortgage of $10,000 belonging to the estate, and one-half of which is held in trust by Messrs. Hickman & Palmer for Mrs. Sewell, concerning which there were negotiations at one time looking to Messrs. Hickman & Palmer taking said mortgage in part payment of the balance due for their services, and which negotiations have fallen through. (3) A rebate sought to be collected under the transfer tax act.

The first item above specified, namely, the $15,000 balance paid to Messrs. Hickman & Palmer by Mrs. Sewell, was the principal subject of contention before the court, and the trial of the issue raised thereon occupied several days in the taking of testimony and the argument of counsel, the issues being earnestly and ably litigated on both sides. The question, however, when calmly viewed in the light of the evidence and of all the circumstances attending the payment of this claim, appears to admit of simple solution. At the outset it is to be noted that both executors, immediately upon the death of their father, joined in retaining Messrs. Hickman & Palmer as attorneys for the estate, and that no fault has ever been found with the manner in which these attorneys performed their duties. The estate has been promptly, efficiently, and successfully administered, and continuous and valuable legal services have been performed by these attorneys, and the sole question for determination is whether, under all the circumstances, the total amounts received by these attorneys represent the reasonable value of such services. The court is materially aided in disposing of this question by the fact that one of the executrices, herself interested to the extent of one-half in the estate and in the claim she has paid, testified that the claim of the attorneys was perfectly satisfactory to her. The practical question before the court, therefore, is whether the one executrix who has paid this claim has acted in good faith, and should be sustained in regard thereto. In this connection it may also be noted that it appears from the evidence—perhaps indirectly—that of late some differences have arisen between the two sisters, which may, in a measure, account for the fact that one of them now objects to the payment by the other of the claim referred to. As bearing upon the reasonable value of the services in question, Messrs. Hickman & Palmer themselves were sworn, and three or four experts, besides, on each side. Without analyzing the testimony, it may fairly be said that the executrix who has paid this claim, and now seeks credit therefor, has justified her action by a reasonable preponderance of evidence, assuming that the burden of so establishing the claim was thrown upon her, which is doubtful. The attorneys who performed the services, together with three other lawyers of high standing at the Buffalo bar, testified unequivocally, in substance, that the services rendered for the estate were worth, from beginning to end, $25,000 and upwards. Most of the experts for the contestants, also attorneys of high standing, put the value of the services at less, but one of the contestants' own witnesses came very near the figures claimed on behalf of Mrs. Sewell. All admitted, what is well known, that the value of legal services is,

to a considerable extent, a matter of opinion, but that in arriving at the same various well-defined elements must be considered,— such as, in this case, the amount involved in the estate, the character and amount of work done, the time occupied in its performance, the results attained, and the standing and reputation of the attorneys performing the services; and the courts have uniformly refused to limit attorney's fees to specified and detailed bills of particulars with a specified amount for each item, as in the case of goods sold, or mere manual services rendered. Randall v. Packard, 142 N. Y. 47, 36 N. E. 823; Rutherford v. Soop, 85 Hun, 119, 32 N. Y. Supp. 636; Bangs v. Bank, 53 How. Prac. 51; Donohoe v. Pomeroy (Sup.) 19 N. Y. Supp. 569; Mellen v. Mellen (Sup.) 17 N. Y. Supp. 866; Thompson v. Ice Co. (Com. Pl.) 2 N. Y. Supp. 18. While the value of the services performed by Messrs. Hickman & Palmer has been established by preponderance of evidence, the duty of the court is made still clearer by the further consideration that the sole question now presented for determination is whether the executrix who has paid this claim has acted with reasonable diligence and in good faith in so doing; and it is clear that, if she had consulted all of the attorneys who have been witnesses in regard to this question, and had received from them the opinions which they gave under oath in court, she would scarcely have been justified in rejecting the claim, and in subjecting herself and her co-executrix to an action. There appears thus to be no valid ground for charging Mrs. Sewell personally with the balance of $15,000 for which she claims credit, or any part thereof, and the same is therefore allowed.

As regards the disposition to be made of the $10,000 mortgage, one-half of which is held in trust by Messrs. Hickman & Palmer for Mrs. Sewell, the decree on final accounting shall provide that the one-half interest so held be assigned by said Hickman & Palmer to Mrs. Sewell.

As regards the third item, relating to a rebate sought to be collected under the transfer tax act, nothing being before the court at this time for distribution, it may safely be deferred for a future accounting, if the same becomes necessary.

It also appears upon the hearing that certain moneys to the credit of the deceased were on deposit in the Bank of Commerce of Buffalo at the time the bank failed several years ago, and that several dividends have been declared by the receivers of said bank, which have not yet been withdrawn by the executrices of this estate. The amount of such dividends that are now available to the estate should be ascertained, and the final decree should provide for their equal division between Mrs. Campbell and Mrs. Sewell; and as to any future dividends that may be declared the decree should provide that they be equally divided between Mrs. Campbell and Mrs. Sewell.

Decreed accordingly.