was believed by the referee in opposition to the oath of the trustee as to an alleged statement of an account. The judgment thus rendered is not binding as an estoppel between the trustee and his beneficiaries on an issue as to his good faith in his dealings as trustee, and the testimony given against him in that action is, for the purposes of the present proceeding, mere hearsay.

The objection as to the $401 item is overruled. Decreed accordingly.

(53 Misc. Rep. 211.)

## In re WICK'S ESTATE.

(Surrogate's Court, Oneida County. February, 1907.)

1. EXECUTORS AND ADMINISTRATORS—ALLOWANCES—ATTORNEY'S FEES.

　　Where an executor is a lawyer and attends to the proceeding for the probate of a will, an allowance will not be made to his brother-in-law, also a lawyer, for services, where he went to the surrogate's office at the executor's request and stayed until the will was probated; the executor thinking there might be some opposition.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 448–462.]

2. SAME—ALLOWANCES.

　　An executor will not be allowed compensation for services in serving citations in the proceeding for the probate of a will.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, § 449.]

3. SAME.

　　Where an executor incurred unnecessary expenses in the defense of a small claim, his allowance therefor will be limited to the taxable costs and disbursements.

　　[Ed. Note.—For cases in point, see Cent. Dig. vol. 22, Executors and Administrators, §§ 449–456.]

In the matter of the estate of Christian Wick. On final accounting by executor. Decree rendered.

H. S. Wilson (D. F. Searle, of counsel), for petitioner.
E. O. Worden, for contestant.

SEXTON, S. On July 19, 1904, Peter Ammon filed his account as executor of the above estate, and, on October 30, 1906, filed a supplemental final account. December 24, 1906, Gottlieb Blessing, as executor of the estate of Anna M. Wick, widow and only interested person in the estate, filed objections to the following items in said accounts:

Witness fees in Fred Wick Case.....................................$ 32 00
To executor personally serving notices of appraisal................ 10 00
To executor personally serving citations........................... 20 00
To H. S. Wilson on probate of will................................. 10 00
To H. S. Wilson on probate of will................................. 15 00
To John F. Wilson in Fred Wick case................................ 25 00
To H. S. Wilson in Fred Wick case.................................. 150 00

Judgment against Rose Wick for costs, $76.93, and judgment against Fred Wick for costs, $169.53, should not be credited to the executor without proof that they are uncollectible. Upon the trial, objection to the first item, witness fees, was withdrawn, and the ex-

ecutor is hereby credited with the same. The second item of $10, for posting notices of appraisal by consent, is disallowed.

The third item is one of $20, claimed by the executor for having himself served citations. In connection with this item the question arises: Can an executor claim an allowance for "extra services" rendered by himself in the conduct of the affairs of an estate, a compensation beyond the commissions allowed by statute? This was a service that the executor was not obliged to render. It could have been delegated to another at the expense of the estate; but he, having chosen to render the services himself, must look to his commissions for remuneration. Any other rule wou.d be obviously dangerous. I am aware of a long line of cases where executors have been allowed extra compensation for special services, not executorial, which specially benefited and enhanced the estate; but do not regard the serving of a paper by an executor within the rule laid down. It has been held that, where an attorney as an executor has rendered services to the estate, no allowance can be made to him beyond his commissions. The item of $20 is disallowed. Clinch v. Eckford, 8 Paige, 412; Matter of Howard, 3 Misc. Rep. 170, 23 N. Y. Supp. 836; Collier v. Munn, 41 N. Y. 143; Lent v. Howard, 89 N. Y. 169; Smith v. City of Albany, 61 N. Y. 444.

The two items of $10 and $15, respectively, paid Attorney H. S. Wilson for alleged services on probate of the will, are disallowed. The executor is an attorney, and prepared all of the papers and proved the will. For some undisclosed reason Mr. H. S. Wilson, an attorney, a brother-in-law of the executor, sat in court for about an hour on two occasions in an ex parte matter, so carelessly conducted that a supplemental citation was necessary, for which the executor paid him $25, and now seeks reimbursement out of the estate. In the first account filed by the executor he credits himself with $10; and in the supplemental account he credits himself with $15 more for work completed at the time the first account was filed, which two items make up the $25 involved. Mr. Wilson testified:

"I was there at Mr. Ammon's request, and he prepared all the papers himself, and I simply staid there until it was over. He didn't know but that there would be some opposition."

Upon these facts I conclude that said services, if in fact any were rendered by Mr. Wilson, have not been shown to have been necessary or beneficial to the estate. The executor, having done the work himself, is not entitled to any compensation therefor beyond his commissions; hence he must not be allowed by strategy to circumvent the law. Matter of Holland Trust Co., 24 N. Y. Supp. 850, 3 Misc. Rep. 396, and cases cited.

It is urged that the item of $25 paid to John F. Wilson and $75 paid to H. S. Wilson, and $75 paid to D. F. Searle, as attorneys, making a total of $175, exclusive of disbursements by the executor, for their services in an action in the Supreme Court, brought by Fred Wick, to recover $122 claimed for services against the deceased, is too much, and should be reduced to $65, the taxable costs. Section 2730 of the Code of Civil Procedure provides that·

"In all cases such allowance must be made for their necessary expenses [executors and administrators], actually paid by them as appears just and reasonable."

Christian Wick, whose estate is here involved, died in May, 1903. His will was probated in June, 1903. Peter Ammon, named as executor therein, qualified and is now acting. Fred Wick, a nephew of the deceased, April 21, 1904, presented to the executor a verified claim against said estate for "doing work and chores through the winter, from April 1, 1901, to April 1, 1902, $50, and doing work, chores, and farm work from April 1, 1902, to April 1, 1903, $72, making a total of $122." This claim was rejected and on July 19, 1904, the executor filed his final account. July 31, 1904, claimant in writing offered to have the same determined by the surrogate, under section 1822 of the Code. This was refused by the executor. September 13, 1904, claimant commenced an action in Supreme Court. Issue was joined and the case noticed for trial for November 7, 1904, at Rome, N. Y. In some manner, not disclosed by the evidence before me, the trial of the case was begun before Mr. O. P. Backus as referee, on June 1, 1905, and thereafter, in October, 1906, he rendered his decision dismissing the complaint with costs. His fees were paid, in the amount of $70.

Attorney John F. Wilson did work covering 74 of the 88 pages of the referee's report, and had paid to him for his services $25. H. S. Wilson and D. F. Searle did work covering the remaining 14 pages of the report, and Searle summed up. H. S. Wilson was connected with the case from the beginning. One hundred and fifty dollars was paid them, which was divided. The summing up took two hours. The 88 pages of the referee's report, if written in ordinary longhand, would cover about 40 pages, and represents not to exceed four days' work. In the estate there was $917.50 in the bank and real estate worth about $600. The plaintiff prosecuted his case with one attorney, and the executor, himself an attorney, had the help of three different attorneys in the defense of the action.

On the facts presented I do not think the executor wisely and frugally managed the estate. One of the attorneys testified:

"Since 1882 I tried only two cases alone in courts of record. I don't like the practice of trying cases."

It was bad management to employ a man to try a case to whom trials were so distasteful that the executor felt called upon to employ two other lawyers to help him. The plaintiff having offered to let the surrogate try his claim, much would have been saved the estate had the executor consented. When the case was on the Supreme Court calendar, if it had been tried there, referee's fees of $70 could have been saved. Mr. Searle testified that, had he been employed in the first place, he could have carried it through alone. Attorney McMahon, witness for the executor, testified that likely there were perhaps a dozen attorneys in Rome any one of whom could have done the same thing. He also said it would not be good business to spend $175 on attorneys to defend a claim of $122. The total amount of costs and

disbursements incurred in the defense of this claim is $313.09, which seems entirely out of proportion to the amount involved and the size of the estate, which is about $1,500. This executor very likely proceeded upon the theory, quite prevalent, that any controverted question in connection with an estate can be safely litigated, provided he acts in good faith and under advice of counsel. This is not the rule. Estates cannot be frittered away in litigations involving trifling amounts. Any other rule would enable a conscienceless executor to practically distribute the property of the dead among his friends at the bar. An executor is required by law to exercise a reasonable measure of intelligence, and such ordinary discretion and judgment as men usually exercise in the management of their own affairs. Matter of Huntley, 13 Misc. Rep. 375, 35 N. Y. Supp. 113, and cases cited. I conclude and find that it was negligent management of this estate for the executor, upon the facts, to have employed an attorney unable to conduct the defense of the action; also to have refused to permit the surrogate to determine this claim, or at least to have declined to do so; also to have taken the case from the Supreme Court calendar, where it might have been tried before a jury without the expense of $70 paid the referee.

There is evidence before me that the taxable costs, amounting to $65, is fair compensation for the work of the defense of this action, and the same is hereby allowed the executor in full of attorneys' compensation in the Fred Wick action. This does not, however, include disbursements. They may be added. The balance of the claim for amount paid by executor to attorneys in the Fred Wick action is disallowed. All admit what is well known, that the value of legal services is, to a considerable extent, a matter of opinion; but, in arriving at the same, various well-defined elements must be considered, such as, in this case, the amount involved in the estate, the character and amount of the work done, the time occupied in its performance, the result, and the standing and reputation of the attorneys performing the services, and the courts have uniformly refused to limit attorney's fees to specified and detailed bills of particulars, with fixed amount for each item, as in case of goods sold or manual services rendered. Matter of Sewell, 32 Misc. Rep. 604, 67 N. Y. Supp. 456, and cases cited.

The claim of Dr. E. C. Reams should be reduced from $33 to $32.

The judgments for costs are properly set out in the final account.

Decreed accordingly.