Matter of Clifford (2025 NY Slip Op 50291(U))

[*1]

Matter of Clifford

2025 NY Slip Op 50291(U)

Decided on March 6, 2025

Surrogate's Court, Monroe County

Ciaccio, S.

Published by New York State Law Reporting Bureau pursuant to Judiciary Law § 431.

This opinion is uncorrected and will not be published in the printed Official Reports.

Decided on March 6, 2025
Surrogate's Court, Monroe County

In the Matter of the Application for the Settlement of the Accounting 
 by William N. Clifford as Trustee of the By-Pass Trust under Article VI of the Will of Gerald R. Clifford Deceased.

Index No. 2018-1242/L

Peter J. Glennon, Esq., of counsel to The Glennon Law Firm, P.C., Attorneys for William Clifford, the Petitioner herein and Trustee of the Gerald R. Clifford Trust. 
Martin W. O'Toole and Jerauld E. Brydges, Harter Secrest & Emery LLP, attorneys for the Objectant Daniel Clifford. 

Christopher S. Ciaccio, S.

William Clifford ("William") is the successor Trustee of a testamentary "By-Pass" trust (the "Trust") created under the Last Will and Testament of his father, Gerald Clifford. He has filed a final accounting and a petition for judicial settlement. Fifty-five (55) Objections have been filed by Daniel Clifford ("Dan" or "Objectant"), the Trustee's brother, and a beneficiary of the trust. 
William now moves for summary judgment dismissing the Objections.[FN1]

Dan opposes, asserting, among other grounds, that he is unable to state "facts essential to justify opposition . . . " (CPLR 3212 [f]) because the court set a deadline for an examination of the Trustee pursuant to SCPA 2211(2), which was never scheduled and never taken, and the [*2]deadline passed. Dan now asks for court leave to take the examination and conduct further discovery.
For the reasons below, the motion is granted with respect to all remaining Objections except Objections 2-5.
The court has reviewed all submissions as filed in the NYSCEF system, including the correspondence between the parties. 
BACKGROUND
Gerald R. Clifford (the "decedent") died a resident of Monroe County, New York on May 24, 2018. He was survived by his wife, Jane N. Clifford ("Jane"), and his three sons: William (the successor trustee); Peter M. Clifford; and Daniel (the Objectant).
The decedent's probated Will directs the residuary estate into a By-Pass Trust under Article VI, with distributions of principal and net income to his surviving spouse and his descendants at the discretion of the co-trustees. Dan is a beneficiary of the By-Pass Trust.
The Will was probated in June 2018. Letters testamentary were initially issued to Jane but she subsequently resigned, and successor letters were issued to William.
Jane was also issued letters appointing her as trustee of the Trust.
Jane passed away on January 3, 2021. After she died William was appointed as Successor Trustee by Decree of this court dated July 16, 2021.
William as Successor Trustee of the Trust filed a final accounting and petition for judicial settlement on November 4, 2022.
Dan requested an examination of the Trustee pursuant to SCPA 2211 (2), so at the request of the parties, the court issued a Scheduling Order on December 29, 2022. The Order required the examination of the Trustee to be completed by February 3, 2023, and Objections to be filed by February 10, 2023.
The parties worked through production of documents, ultimately disagreeing as to what needed to be produced and what was "unduly burdensome" or "not relevant" (see NYSCEF # 355).
At the request of the parties, the court extended the deadline for the filing of objections to February 17, 2023, by a "First Amended Scheduling Order" entered on February 2, 2023.
On February 17, 2023, the court issued a "Second Amended Scheduling Order," again on consent, which extended the deadline for an examination of the Trustee to March 10, 2023, and the filing of objections to March 17, 2023. 
On the same day the court signed and entered the Order, Dan filed a Motion to Compel Discovery. At issue were documents relating to the corporate entity and funds belonging to Thirsty's Young Gentlemen, Inc., the assets of which Daniel had purchased from the Estate in 2022; documents relating to the several months preceding the period covered by the accounting; a $56,000 reserve fund maintained by the House of Bacchus, an estate entity that passed into the Trust; a supposed valuation done of the 2900 Monroe Avenue and Clifford's of Pittsford properties; and supposed communications between the owners of those properties and the Trustee ("the Trustee must have been [emphasis added] in communication with Mr. Clifford") (see NYSCEF 348, Exhibit F, letter from Martin O'Toole to Peter Glennon dated January 27, 2023).
William responded that the requests in Dan's motion were "overbroad;" "not relevant;" and "not . . . reasonably calculated to lead to the discovery of relevant or admissible evidence." He also argued that the discovery requests seek documents already in the possession of Dan or do not exist.
He also inveighed that Dan's issues with the document production were an "example of his long-established pattern of pursuing baseless litigation that only serves to further delay distribution of the Trust at the expense of the beneficiaries."
By Order dated April 11, 2023, the court denied the motion and granted the Trustee's cross-motion for a protective order, to the extent indicated in the Order, as follows:
"ORDERED, that the Objectant's motion is hereby DENIED; however the Trustee is hereby directed to (i) send a letter to Objectant's counsel stating the source and disposition of the funds attributable to Thirsty's Young Gentlemen, Inc., in the Trustee's Accounting filed on November 4, 2022 ("the Accounting"), and stating the basis for the reserve of funds in the Accounting for potential tax liability associated with House of Bacchus, and (ii) the Trustee's counsel is hereby directed [to] inform counsel for Robert Clifford that he may speak freely with the Objectant's counsel."
The Order was not entitled as a "Scheduling Order" but did extend the deadlines for discovery, making it the third extension. The deadline for completion of the examination of the Trustee and for filing Objections to the account was extended to the same date, May 8, 2023, thus signaling that the examination should take place as soon as possible to allow for time to frame the Objections. 
There was no written decision explaining the Order although the Order referenced that the court had read and reviewed the submissions, including the Reply, and heard oral arguments.
It is apparent - I find it apparent - from the face of the Order that in denying the motion to compel the court applied the "material and necessary" standard of Article 31 (which SCPA 2211 [2] states is the governing discovery statute). It gleaned that document requests relating to the period prior to the accounting period were relevant only to the extent of the source of funds still in possession of the corporate entity Thirsty's Young Gentlemen, Inc. and not directed to the [*3]production of relevant material; that the Order resolved the hypothetical communication issue by removing any restriction on the right of the counsel for the Objectant/beneficiary to communicate with counsel for an owner of the entities in the Trust; and that it directed an answer be provided regarding the $56,000 reserved in the House of Bacchus account.
Again, it can be inferred - and the court would so find now, nunc pro tunc as it were - that all other requests for documents were deemed not pertinent to the issue of the accuracy of the accounting, i.e., not "material and necessary" (CPLR 3101 [a]); Skoutelas as Tr. of Scoufaras Tr., 84 Misc 3d 1224[A] [Sur Ct, Queens County 2024]), and not pertinent to some " . . . specific act of wrongdoing which has resulted in identified damage to some individual asset" (Matter of Clifford, 83 Misc 3d 973, 976 [Sur Ct 2024], quoting Matter of Pratt, 172 Misc 756, 757-58 [Sur Ct, Kings County 1939]). This is so even when those requests are viewed "liberally to require disclosure, upon request, of any facts bearing on the controversy which will assist preparation for trial by sharpening the issues and reducing delay and prolixity" (Kapon v Koch, 23 NY3d 32 [2014]). "The test is one of usefulness and reason" (Allen v Crowell-Collier Publishing Co., 21 NY2d 403, 406 [1968]).
While not entirely agreeing with counsel for the Trustee that the Dan was pursuing "baseless litigation," and recognizing that "The statute (SCPA 2211[2]) gives the examiner even wider latitude than pertinent general discovery rules" (In re Grossman, 211 AD.2d 409, 411 [1st Dept 1995]), the court was of a mindset - and is now - that Daniel had unreasonably delayed the scheduling of the 2211 examination, causing the opposite effect of what has been called the "salutary effect (of a 2211 examination) of reducing and simplifying the issues raised, thereby expediting the trial of those issues (emphasis added)." (Harris 6th Edition New York Estates: Probate Administration and Litigation, vol. 2, §28:59 at 767 [2023]).[FN2]

Moreover, the court deemed the premise put forward as the reason counsel for Daniel did not act to schedule the examination not reasonable or convincing. It had nothing to do with the litigation. 
That premise, raised by counsel for Dan in a letter to the court on May 9, 2023 (NYSCEF # 373) seeking an extension of the deadlines (a request made after the expiration of the deadline), was that Dan was negotiating a purchase of the property known as 2900 Monroe Avenue and according to counsel "We did not think it advisable to be conducting depositions or filing objections while the parties were attempting to achieve a sale of the Trust's largest remaining asset" and that Dan's reluctance to schedule the SCPA 2211 hearing was "simply an effort to make the most constructive use of the parties' resources. It is not an attempt to gain any sort of leverage or prolong matters."
The court agreed then, and continues to agree, with the Trustee's counsel, that "(t)o be clear, the parties are engaged in due diligence for Dan Clifford to purchase the Trust's share of the Monroe Avenue properties — but in no way is any potential purchase part of any possible settlement of Dan Clifford's issues with the Trust" (emphasis added).
Dan's attorneys had in their possession over 500 pages of documents, which is not to say that the completeness of the Trustee's disclosure should be judged by the sheer number of pages, but it was a substantively significant production. Much of what was requested in the document discovery requests was speculative as to the existence of the documents — e.g., communications that "must have" taken place.
Counsel for the Trustee had worked, in good faith the court believes, to provide much of what was requested of him and to answer several if not all the questions raised by counsel for Dan (see e.g. NYSCEF # fillings 320, 332), although many of the exchanges between counsel devolved into what the court deems were unproductive and unverified accusations of impropriety (see e.g. NYSCEF # filings 427, 433).
And Dan would not have forfeited his right to further discovery by going forward with the SCPA 2211 examination. If in the examination of the fiduciary he discovered documents not yet produced, he could have made a post-examination demand for them. He could request another examination (pursuant to CPLR 3102[a]) upon a showing of "special circumstances." (see Matter of Estate of Dorman, 175 Misc 2d 479, 481 [Sur Ct Cattaraugus Cnty 1998]; Matter of Hambleton, 202 AD2d 1051, 1051 [4th Dept 1994]; In re Coyle's Will, 61 Misc 2d 720 [Sur Ct Albany Cnty 1969]). He could if necessary, move for leave to amend the Objections (see CPLR 3025 [b]; Matter of Duell, NYLJ, December 10, 2019, at 22, col. 5 [Sur Ct, New York Cnty]; Lucido v. Mancuso, 49 AD3d 220 [2d Dept 2008]).
Thus, adhering to discovery deadlines — extended three times — would not have necessarily prejudiced Dan, given that his inquiries did not need to end upon completion of the SCPA 2211 examination.
In any event, after the cut-off date of May 8, 2023, had passed, and after considering letters from counsel for each party regarding a further extension, the court issued on June 2, 2023, a "Third Amended Scheduling Order" which extended the deadline to serve objections to July 6, 2023, but did not extend the time within which to conduct an examination. It also did not preclude an examination.
Dan filed his objections on July 6, 2023.
A "Scheduling Order" (the sixth, but not titled as the sixth) was issued on August 25, 2023, and extended the time for the completion of discovery to September 12, 2023. Again, no limitation was placed on any request for an examination of the fiduciary. Dan never requested or scheduled or attempted to schedule an examination.
On September 28, 2023, the Trustee moved to dismiss the Objections pursuant to CPLR [*4]3211 (a) (7) (failure to state a cause of action).
After reading the submission and hearing oral argument, by Order filed on April 25, 2024, the court granted the motion in part — dismissing many objections — and denied it in part.
This summary judgment motion, directed at the remaining objections, followed.
Summary Judgment — Analytical Framework
In an accounting proceeding, the party submitting the account has the ultimate burden of demonstrating that he or she has fully accounted for all of the assets belonging to a decedent's estate (see Matter of Crane, 100 AD3d 626, 628 [2d Dept 2012], citing Matter of Taylor, 79 AD3d 76 [2d Dept 2010]; Matter of Heino, 73 AD3d 1062, 1063 [2d Dept 2010]; Matter of Tract, 284 AD2d 543 [2d Dept 2001]). "This is accomplished by submitting the accounting along with a good faith affidavit" (Matter of Salvati, 75 Misc 3d 1231(A), 171 NYS3d 890 [Sur Ct Westchester Cnty 2022], citing Matter of Magnor, NYLJ, March 29, 2000, at 32, col 5).
Analogized to the framework of summary judgment analysis in a civil action, this step would be the equivalent of establishing prima facie entitlement to judgment as a matter of law Matter of Crane at 628).
The burden then shifts to the party objecting to an account to produce evidence — "material of evidentiary quality" (Estate of Mangor, 2000 NYLJ Lexis 1401 [Surr Ct Queens Cnty 2000]) - to demonstrate that the account is incomplete or inaccurate (see 2 Harris 6th, NY Estates: Probate, Admin. & Litigation § 28:100; Matter of Taylor, 79 AD.3d at 766; Matter of Heino, 73 AD3d at 1063). Put another way, " . . . (T)he objectants have the burden to show with reasonable certainty that the estate has more assets than are accounted for and the accounting party failed to act prudently with regard to handling the administration of the estate" (Matter of Salvati, 75 Misc 3d 1231(A), 171 NYS3d 890 [Sur Ct 2022]; citing Matter of Donner, 82 NY2d 574 [1993]). "Conjecture and suspicion are insufficient" (Salvati at 1236; citing Matter of Mann, 41 AD2d 861, 342 N.Y.S.2d 617 [3d Dept 1973]; Matter of Rudin, 2005 NYLJ LEXIS 4991 [Sur Ct, NY County]).
Again, this is analogous in a civil action to raising a triable issue of fact which is met by the production of material and admissible evidence and not by "assertions or speculations of . . . counsel" (Alvarez v Prospect Hosp., 68 NY2d 320, 327 [1986]). To meet that burden, the objectant must produce more than "unsupported summary conclusions" (Estate of Mangor, 2000 NYLJ Lexis 1401 [Surr Ct Queens Cnty 2000]). As a treatise stated, "The Magnor decision highlights the willingness of the courts to grant summary judgment when a party merely asserts imprudence and improper conduct as an objection, without any evidence to support the allegations" (Martin O'Toole et al, Harris 6th Ed: New Yok Estates: Probate Administration and Litigation [Vol 2, §28:104 2023]).
Once the objecting party has come "forward with evidence to establish that the account is inaccurate or incomplete, the accounting party must prove, by a fair preponderance of the [*5]evidence, that his or her account is accurate and complete" (In re Heino, 73 AD3d 1062, 1063, 901 NYS2d 671 [2d Dept 2010], citing Matter of Tract, 284 AD2d 543 [2nd Dept 2001] [internal quotation marks omitted]; Matter of Campione, 58 AD3d 1032, 1034 [3rd Dept 2009]; Matter of Schnare, 191 AD2d 859, 860 [3d Dept 1993], lv denied 82 NY2d 653 [1993]; see also 29 Carmody-Wait 2d, Surrogate's Court & Estate Prac § 166.181, at 418]). 
THE OBJECTIONS
Objections 2-5
The Objectant argues that the Trustee improperly reported the "Excess Cash on Account" of Thirsty's in the amount of $412,144.11 and "Thirsty's — ESL Account Balances" in the amount of $223,063.50) as principal (instead of income) and the corresponding charging of commissions relating to these amounts (Trustee Aff., Exhibit B at Schedule A [p.3]).
The Trustee repsonds that the money in question represents proceeds from the partial liquidation of Thirsty's, and so falls within an exception to EPTL 11-A-4.1 (b).
That exception, found at EPTL 11-A-4.1 (c) (3), explicitly provides that a trustee "shall allocate" receipts from an entity to principal including, but not limited to money received in total or partial liquidation of the entity.
However, as the Objectant points out, the sale of Thirsty's did not close until June 2, 2022, yet the Trustee claims the funds were received on November 19, 2021.
Some clarification is needed here as to how the Trustee received funds prior to the closing. The trustee did not sustain his burden of demonstrating the accuracy of the account with respect to this issue.
The motion with respect to Objections 2-5 is denied.
Objections 17 and 18
Objections 17 and 18 take issue with how the Trustee reported third-party debt, stating that the financial statements "suggest" (the Objectant's word) that 2900 Monroe Avenue was subsidizing Clifford's of Pittsford. To the Objectant, "it is not clear" how the numbers can be reconciled and that there are "inconsistencies."
Characterizations like "Not clear" and suggest" are not evidence and do not create material issues of fact. The trustee sustained his burden as the complained-of entries do not fail on their face. Discovery may have flushed out (or laid to rest, for that matter) the lack of clarity but the Objectant having waived an examination, the objection is dismissed.
Even if it had raised a question of material fact sufficient to defeat summary judgment, the Trustee's response effectively puts the issue to rest and sustains his burden of showing tha the [*6]account is accurate. He adequately explains the entries questioned by the Objectant and asserts that he has "accurately reported any inter-company indebtedness between Clifford's of Pittsford and 2900 Monroe Avenue." The court agrees.
The motion is granted and Objections 17 and 18 are dismissed.
Objection 19
Objection 19 asserts that the Trustee failed to timely provide the Schedule K-1 issued by the Trust for 2021.
The Trustee responds that the trust returns for 2021 were filed under an extension. Dan says this response was a "willful misdirection," an accusation that seems out of proportion to the response let alone the gravity, or lack thereof, of the action complained about.
Better perhaps to say that the response could have been less opaque and should have articulated (although it seems obvious) that the Schedule K-1 did not have to be provided until the returns were filed. The Trustee shows, and thereby sustains his burden, that he had an extension of time within which to file, and once the returns were filed, the Schedule K-1 was provided.
While Dan may have received his Schedule K-1 for the Trust's 2021 tax-year in June 2022, the state and federal 2021 tax returns for the Trust were timely and properly filed within the extension deadline.
The trustee having come forward with a "fair preponderance of evidence" to rebut the contention, the motion is granted. Objection 19 is dismissed.
Objection 22
In Objection 22, Objectant contends that the Trustee failed to adequately supervise the tax reporting for Thirsty's because reimbursements to William Clifford are not accounted for as loans from the Trustee for fiduciary taxes.
Summary judgment in an accounting proceeding cannot be defeated by pointing out a lack of "explanation," and since no evidence is presented that the entries are inaccurate or impact the finances of the Estate, the objection is dismissed. The Objection fails to raise a material issue of fact. Notwithstanding, the Trustee's detailed response explaining the entries would entitle it to summary judgment even if the objection in its present form raised a question of fact.
The motion is granted. Objection 22 is dismissed.
Objection 23
Objectant alleges that the Trustee failed to account for "loan(s) from the shareholder" as [*7]shown in the 2020 K-1 issued to the Estate in the amount of $10,614.
Standing alone without any testimony or documentation to support the allegation that the Schedule K-1 is not reconciled with the accounting, the objection fails to raise an issue of fact.
Even if it did, the Trustee provides the explanation that the accounting covers the period March 3, 2021 through October 31, 2022, and since the accounting trustee William Clifford was not the trustee in 2020 when the "loan" was made, it is self-evident that the amount on the Schedule K-1 did not have to be "accounted for or identified." It appeared on the Schedule K-1 issued for 2020 and prepared by the Trustee for 2021, because the Trustee acted on it - the preparation of the Schedule K-1 — in 2021 while he was trustee. But there would be no place to make the entry in the present accounting, because again, the action took place in 2020.
Also, the Trustee points out that the Objectant failed to object to the executor's final account, which was filed in November 2020, which was also when the assets of the Estate were transferred to the Trust. If the Objectant sought to discern the mystery behind the loan (to what end is not clear, since there is no allegation that the Trustee, acting as executor of the Estate, negatively affected the finances of the Estate or subsequently the Trust) an Objection should have been raised then, a point that in the court's view renders the Objection without substance. 
The motion is granted. Objection 23 is dismissed.
Objections 24 and 25
The Objectant is troubled by the lack of information regarding the "full calculation of the of the RFF ("Restaurant Revitalization Fund") grant, including any reduction for the PPP ("Paycheck Protection Program") loan calculated using Jane Clifford's compensation."
On its face the information provided in the accounting regarding the "calculation" at issue is easily understood as articulated by the Trustee (or counsel), thus meeting his burden.
The objections raise no issue of fact. They do not allege or even suggest that the calculations regarding the RFF grant impact the accounting monetarily or are "actually," not speculatively, inaccurate. It is only Objectant's guess as to whether there was a misstatement as to funds flowing from the RFF grant.
To the extent that the Objectant needs more information to fully explore what he feels is a miscalculation or a misstatement, he waived an examination of the Trustee, so that an appeal to CPLR 3212 (f) ("Facts unavailable to opposing party") does not provide a remedy to avoid dismissal of the objections.
The motion is granted. Objections 24-25 are dismissed.
Objection 36
Objection 36 claims that the Trustee failed to supply "time sheets with sufficient detail" and indeed, many of the sheets are extensively redacted.
The fees charged on their face do not appear unreasonable, a judgment the Surrogate I uniquely situated to make (see Matter of Middagh, 276 AD2d 593 [1999]), and it is not unreasonable or a breach of fiduciary to provide time sheets with redactions. The trustee has met his burden.
The Objection fails to raise an issue of fact. It does not complain of the total fees charged, rather only the redactions from some of the entries.
However, there is no provision, statutory or in the case law, that mandates that the fee charged be particularized by time entries (in common practice in six-minute increments) accompanied in all instances by an explanation of every time entry (see Matter of Sewell, 32 Misc Rep 604: "The value of an attorney's services cannot be limited to 'specified and detailed bills of particulars with a specified amount for each item, as in the case of goods sold, or mere manual services rendered.' [Matter of Sewell at 607]).
Fees in Surrogate court matters are judged by factors set forth in In re Potts' Estate, 213 AD 59, 62 [4th Dept 1925], affd sub nom. In re Potts, 241 NY 593 [1925]) and the many, many cases that cite to its authority (e.g. Matter of Freeman, 34 NY2d 1); Matter of Estate of Warhol, 165 Misc 2d 726, 730 [Sur Ct 1995] In re Bank of Am., Na, 12 Misc 3d 1168(A) [Sur Ct 2006], affd sub nom. In re Bank of Am., N.A., 37 AD3d 1094 [4th Dept 2007]).
While particularized time entries might be in certain situations not the worst idea, nonetheless, failing to identify "padding" of the account (see e.g. In re Bank of Am., Na, 12 Misc 3d 1168(A), 820 NYS2d 841 [Sur Ct 2006], affd sub nom. In re Bank of Am., N.A., 37 AD3d 1094, 827 NYS2d 912 [4th Dept 2007]) or even to argue that the bill is "unreasonable," the Objection fails to raise an issue of material fact sufficient to defeat the motion to dismiss.
The motion is granted. Objection 36 is dismissed.
Objection 40
Objectant takes issue with the valuation for 2900 Monroe Avenue, pointing out that the Trustee did not commission an "independent valuation" to determine what disinterested parties would pay for the property, thus violating a principle of the Prudent Investor Act (EPTL 11-2.3). He "suspects" the valuation is "inflated" and does not consider the indebtedness incurred by the remaining partners for the buy-out of co-partner Thomas Clifford, which also means the Trustee's commissions base for annual and terminating commissions is inflated.
There is no rule that the Trustee was required to retain an independent valuation of 2900 Monroe Avenue. Again, it may be desirable in certain situations. Here, however, the Objectant presents no evidence to show that the valuation was not accurate, or was actually inflated, or was not consistent with what comparable properties would have sold for. The Trustee argues that the [*8]"Objectant does not even submit any affidavit or evidence in connection with its opposition papers (citing Zuckerman v City of New York, 49 NY2d 557, 562 [1980]), and on that basis alone the Objection should be dismissed,, as the mere suspicion that the valuation was inaccurate fails to raise a material issue of fact. 
As with other Objections, the Objectant refers to CPLR 3212 (f) to argue that the actions taken by the Trustee are within his exclusive knowledge and that "discovery" would produce the evidence needed to create the issue of fact required to defeat summary judgment. However, as shown above, the Objectant passed on conducting an examination and so is not entitled to the relief afforded by CPLR 3212 (f).
The motion is granted. Objection 40 is dismissed.
Objection 42
The Objectant feels something must be amiss because a $30,000 distribution was made in 2021 to one partner, Robert Clifford, but not the other, and no distribution was made to the Trust.
The Objectant does not state why that is an issue. As with most of the Objections, if not all of them, no evidence is offered in support of the opposition to the motion to dismiss. The Trustee relies, regarding this Objection and many others, on what he feels is the Trustee's failures to explain his actions. 
In any event, the distribution is plainly accounted for in the Trustee's Reply memorandum. No evidence or even argument is presented as to why it is believed the Trustee violated his fiduciary duty in making the distribution and not others. All distributions were accounted for.
Again, an examination and further discovery might have provided an answer as to why the distribution was inappropriate or unauthorized. Having chosen to not schedule an examination within the deadlines set forth in the Scheduling Order(s), the Objectant can only speculate, which is not enough to oppose the dismissal of the objection, which fails to state a material issue of fact. 
The motion is granted. Objection 42 is dismissed.
Objections 47 and 48
The Objectant provides no response to the motion to dismiss Objections 47 and 48. Thus, the motion is granted, and they are dismissed.
Objections 49-53 and 55
Here the Objectant asserts that the Trustee failed to abide by the Prudent Investor Act [*9](EPTL 11-2.3) in that he (49) failed to pay off a loan, (50) failed to make a checking account more "productive," (51) failed to make a rental property more "productive," (52) failed to properly evaluate a property, failed to perform a "risk/reward" analysis mandated by the Prudent Investor Rule, (55) failed to perform an inquiry into "the preparation of another year's worth of fiduciary income tax returns."
Objection 53 takes issue with "commissions owing to Trustee" due to "negligence and bad faith."
Reduced to a common thread, the Objectant is troubled that the Trustee "does not address or explain any of these decisions" and that the numbers set forth in the accounting "do not reveal anything about the reasonableness of the decisions the Trustee made regarding those assets  or indeed, whether there was even any sort of analysis undertaken regarding those assets, whether there was any sort of due diligence or exploration of alternative investments"
As with nearly all of the Objections, it is the silence of the Trustee on these issues that forms the heart of the Objection.
However, the burden is on the Objectant to show by evidence in admissible form that the accounting is inaccurate.
The Objectant opted to not schedule an examination of the Trustee or conduct further discovery on these issues. There may be legitimate reasons as to why for example the Trustee delayed paying off the GRB loan or why he did not put the money sitting in the checking account into an interest-bearing account. No explanation is provided, but unless the Objectant can come forward with a factual basis to frame the objections to these actions, then none is required.
The Objectant now requests additional time within which to conduct discovery. That request is denied.
No additional discovery, and especially an examination, having been conducted, and no evidence having been presented to demonstrate the existence of a material issue of fact as to a perceived detriment to the financial state of the trust assets as a result of the actions taken, and no evidence produced that the Trustee acted in bad faith or negligently, the motion is granted and Objections 49-53 and 55 are dismissed.
Objections 45 and 46
Lastly, Objections 45 and 46 are not addressed in Objectant's opposition papers nor expressly withdrawn by Objectant (see Battaglia v Town of Bethlehem, 46 AD3d 1151, 1154 [3d Dept 2007] [where a party failed to address a movant's arguments in its opposition to the motion, the party is deemed to have conceded those arguments]).
The motion is granted and Objections 45 and 46 are dismissed.
[*10]ALLOCATION OF ATTORNEY'S FEES
In his Notice of Motion for Summary Judgment (NYSCEF # 478), William requests an allocation of attorneys' fees pursuant to SCPA 2110 (2), in other words, that the court order Dan to pay the legal fees incurred by the fiduciary in having to move for summary judgment [FN3]
.
SCPA 2110 (1) provides that the Surrogate is authorized to "fix and determine the compensation of an attorney for services rendered" and pursuant to SCPA 2110 (2), to "direct payment therefor from the estate or from the funds in the hands of the fiduciary belonging to any legatee, devisee, distributee, person interested."
The Court of Appeals held in In re Hyde, 15 NY3d 179, 182 (2010) that in allocating who pays the fees pursuant to SCPA 2110, a trial court is to consider the following factors:
(1) whether the objecting beneficiary acted solely in his or her own interest or in the common interest of the estate;
(2) the possible benefits to individual beneficiaries from the outcome of the underlying proceeding;
(3) the extent of an individual beneficiary's participation in the proceeding;
(4) the good or bad faith of the objecting beneficiary;
(5) whether there was justifiable doubt regarding the fiduciary's conduct;
(6) the portions of interest in the estate held by the non-objecting beneficiaries relative to the objecting beneficiaries; and
(7) the future interests that could be affected by reallocation of fees to individual beneficiaries instead of to the corpus of the estate generally (see e.g. Matter of Greatsinger, 67 NY2d 177, 183—184 [1986] [providing factors to guide courts in discretionary allocation of attorney's fees among multiple trusts in estate litigation]).
In re Hyde, 15 NY3d 179, 186-87 ([2010]; see also Matter of Thomas, 74 Misc 3d 891, 898 [Sur Ct Monroe Cnty 2022]; Van Wie as Tr. of Helen S. Van Wie Irrevocable Tr. v Van Wie, 73 Misc 3d 1225(A) [Sur Ct 2021])
William argues that Dan has out of spite and personal animosity for William engaged in unnecessary and unproductive litigation over William's conduct as trustee and more particularly with respect to the Objections.
Application of the Hyde factors
Taking the Hyde factors in order, the court draws the following conclusions.
As to factors (1) and (2), ostensibly Dan's issues with the trust accounting may have provided a minimal benefit to all the beneficiaries. For example, if he could have shown that the properties were not being effectively marketed or that the valuations of the properties were below market, then the Trust beneficiaries may have benefited - minimally - by an accurate appraisal but in the absence of an actual appraisal , that is speculative. 
Contra to that, however, is the court's belief that Dan was delaying discovery in order to give him "leverage" in striking a deal for the trust assets. No proof was presented that the Trust assets were actually undervalued.
Regarding factor (3), the other beneficiary did not participate in the litigation. This was Dan's litigation entirely.
Regarding factor (4), the good faith of the objecting beneficiary, the court cannot say that Dan entirely acted in "bad faith," that is, "maliciously" (Matter of In re HSBC Bank USA, N.A., 98 AD3d 300, 323 [4th Dept 2012]), or with "malevolence, dishonesty or other malfeasance" Matter of In re HSBC Bank USA, N.A., i.d.). The Objections may not have stood the test of stating viable causes of action but it cannot be said they were frivolous. It is obvious that Dan is contemptuous of his brother and William despises Dan, but the artfully crafted Objections avoid the inference that the intent behind their filing is malicious.
However, it cannot be said that Dan acted entirely in "good faith." His delay in scheduling the inquiry and the repeated requests for extensions of the scheduling order reflect, in the court' s view an intent to delay the administration of the Trust.
As to the integrity of William (5), limited to proceedings after this court dismissed Objection on the motion to dismiss pursuant to CPLR 3211(a)(7), there is no evidence of justifiable doubt regarding William's management of the trust assets.
Factors (6) and (7) do not seem to be relevant. The shares of the beneficiaries are equal.
All of that said, it calls for an allocation of attorney fees. Dan acted in good faith — he sincerely believed he was being locked out of the opportunity to purchase the Trust assets - but acted only in his self-interest. There was reason to doubt the transparency and fair dealings of William's actions as they involved Dan, but in no way did they negatively affect the value of the estate and trust assets. Only Dan benefitted from his filings, and then only the one that resulted in a Decree allowing him to purchase Thirsty's.
Accordingly, Dan is ordered to pay, out of his distributive share, 20 percent of the fees incurred by the fiduciary regarding the expense of litigating the summary judgment proceeding, reasoning that 1) little benefit, and possibly no benefit, accrued to the beneficiaries because of the litigation over the Objections 2) Dan delayed scheduling an inquiry, not out of a genuine concern to conduct paper discovery before deposing the fiduciary, but out of a desire to leverage a better deal for the trust properties and to delay the wind-up of the Trust affairs and 3) there is no evidence, even after six years had elapse since Gerald Clifford died, that William's integrity is at issue. 
CONCLUSION
The motion is granted to the extent that all remaining Objections are dismissed, with the exception of Objections 2-5.
Counsel for the Trustee is directed to submit his fees the Trustee incurred with regard to advancing the summary judgment motion.
Counsel for the Trustee shall submit an Order.
Dated: March 6, 2025
Rochester, New York
Hon. Christopher S. Ciaccio
Surrogate Court Judge

Footnotes

Footnote 1:Many of the 55 Objections were previously withdrawn or dismissed on the Trustee's motion to dismiss pursuant to CPLR 3211(a)(7). See this court's decision of March 28, 2024 (NYSCEF # 429) (Matter of Clifford, 83 Misc 3d 973, 977-978 [Sur Ct, Monroe County 2024]).

Footnote 2:Ironically, when Jane Clifford had died and William petitioned to be appointed successor trustee, Daniel had called for the trust to be "wrapped up" as expeditiously as possible even going so far as to move by Order To Show Cause to compel the Estate to transfer the assets to the Trust.

Footnote 3:William requested an allocation of fees pursuant to SCPA 2110 in his request for relief in the Notice of Motion to dismiss the Objections for failure to state a cause of action. The court initially reserved on the fee issue (but dismissed a number of Objections) but will file a decision on the fee issue shortly. Because that decision will deal with the fees incurred leading up to the Motion to Dismiss and the pleadings submitted in support, this Decision only relates to the fees incurred relative to the summary judgment motion.